UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ARANTON DEJOUR JOHNSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-4224** |
| **MARLIN GUSMAN** | **SECTION "E" (4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and(2)**. On January 28, 2016, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for defendant participating by conference telephone call.[2] Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

## I.     Factual and Procedural Background

The remaining plaintiff,[3] Aranton Dejour Johnson ("Johnson"), was an inmate housed in the Orleans Parish Prison system ("OPP") at the time of the filing of this *pro se* and *in forma pauperis*, complaint under 42 U.S.C. § 1983. Johnson filed the complaint against the defendant,

---

[1]766 F.2d 179 (5th Cir. 1985).  The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges occurred and the legal basis for the claims.  The information received is considered to an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e).  *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2]Rec. Doc. No. 20.  The plaintiff was sworn prior to testifying and the hearing was digitally recorded.

[3]The complaint has already been dismissed as to the other plaintiffs, David Williams and Keith D. Jones, for failure to prosecute.  Rec. Doc. No. 19.

Orleans Parish Sheriff Marlin Gusman, alleging "unsanitary living conditions and not getting enough recreation time."[4]

At the *Spears* Hearing, Johnson testified that he was a pretrial detainee while at OPP awaiting trial on a robbery charge. He arrived in OPP on July 7, 2014, and was transferred to the Riverbend Correctional Center only three days before the *Spears* Hearing.

Johnson stated that his tier in the old parish prison building had mold and fungus in the showers. Specifically, he testified that the shower drains did not always drain and he believes that, as a result, he contracted a fungus on the bottom of both of his feet. He was examined and his condition was followed by the medical staff until his transfer. The doctor did not tell him what kind of fungus it was. However, the prison doctor could not give him the prescription medicine needed to treat the fungus because it could cause liver problems. Johnson continued to have regular follow-up visits with the prison doctor to check the status of the condition. He also stated that he had not yet had a chance to tell officials at his current facility about the fungus because he had not had his initial medical screening at the time of the hearing.

Johnson also stated that his tier had poor ventilation which made the inmates want to lie down and not move around. He also complained that they could not go outside for fresh air and were only taken outside maybe twice a month.

The tier also had problems with pipes that would occasionally burst or leak, which would flood the tier. When this would happen, the inmates were required to clean it up, which they and the tier would return to a livable condition. The prison officials always sent someone to fix the pipes when this happened, which was only about four times while Johnson was in OPP between July 7, 2014, and January 22, 2016.

---

[4]Rec. Doc. No. 1, p. 4.

2

Johnson stated that he named Sheriff Gusman as the defendant because he was in the Sheriff's custody. Johnson indicated that he did not complain to Sheriff Gusman or notify him about his complaints. Johnson stated that he did file grievances with the Warden and Captain on his tier, and the he responses received stated that the inmates were responsible for cleaning the tiers.

## II. Standard of Review for Frivolousness

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176

(5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

## III. Analysis

### A. No Basis for Liability

Johnson asserts that the conditions of his confinement at OPP were unsanitary, including mold, ventilation concerns, and occasionally leaky pipes. Johnson, however, has named Sheriff Gusman as the only defendant because he was in the Sheriff's custody. Johnson does not allege that Sheriff Gusman was personally notified about or involved in addressing his complaints.

To recover under § 1983, a plaintiff must identify both the constitutional violation and the responsible person acting under color of state law. *See Flagg Bros.*, *Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk County v. Dodson,* 454 U.S. 312 (1981). Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to liability on a claim for damages under §1983. Thus, a supervisory official, like Sheriff Gusman, cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* or simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also*, *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or respondeat superior liability."). A defendant would be liable under § 1983 only if he was "personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also*, *Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120, 123 (5th Cir. 1980).

In this case, Johnson does not assert that Sheriff Gusman was personally involved in or knowledgeable of the conditions or his medical care. Johnson also has not alleged that he has

4

suffered any injury directly resulting from any order, training, or other policy implemented by Sheriff Gusman that would create a vicarious liability under § 1983.  *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *see also*, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988).

Johnson has not asserted a personal action or connection to render Sheriff Gusman liable under § 1983 or liable for the actions or inactions of his subordinates at the jail.   For these reasons, Johnson's claims against the Sheriff as supervisory official over the prison are frivolous and otherwise fail to state a claim for which relief can be granted under § 1915, § 1915A, and § 1997e.

### B.     Conditions of Confinement

Even if Johnson had identified a proper defendant, he has not alleged or established a constitutional violation resulting from the conditions in OPP to recover under § 1983.

The Eighth Amendment's prohibition on "cruel and unusual punishments" forbids conditions of confinement "which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' ... or which 'involve the unnecessary and wanton infliction of pain.'"   *Estelle v. Gamble*, 429 U.S. 97, 102-103 (1976)(citations omitted). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.   To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

As addressed previously, a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation."   *Douthit*, 641 F.2d at 346.

5

Furthermore, the official must have acted with deliberate indifference to a known risk of harm to be liable under § 1983. An official is deliberately indifferent to an inmate's health and safety in violation of the Eighth Amendment "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999). "Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of harm." *Thompson*, 245 F.3d at 459. The plaintiff must prove facts sufficient to show "at a minimum, that the prison officials realized there was imminent danger and have refused--consciously refused, knowingly refused--to do anything about it." *Campbell v. Greer*, 831 F.2d 700, 702 (7th Cir. 1987). Applying these factors to the instant case, Johnson has not alleged a constitutional violation based on the conditions in OPP.

### 1. **Mold, Standing Water, and Poor Ventilation**

The conditions described by plaintiff, while plainly not comfortable or pleasant, do not rise to a level of seriousness to be considered a constitutional violation. The federal courts have long recognized that serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982). The Courts also have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." *Talib*, 138 F.3d at 215 (citing *Rhodes*, 452 U.S. at 349); *accord Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).

In keeping with this philosophy, the federal courts have recognized that certain institutional problems such as dust, mold, and stale air do not amount to a constitutional violation. *See*, *e.g.*, *White v. Gusman*, No. 14-2131, 2014 WL 6065617, at *1 (E.D. La. Nov. 12, 2014); *Harrison v. Cox*, No. 12-1813, 2013 WL 620799, at *5 (W.D. La. Jan.16, 2013), *adopted*, 2013 WL 622399,

at *1 (W.D. La. Feb. 15, 2013); *Clark v. Gusman*, No. 11-2673, 2012 WL 1825306, at *5 (E.D. La. Mar. 29, 2012), *adopted*, 2012 WL 1825302, at *1 (E.D. La. May 18, 2012). To the extent Johnson asserts that these factors were present in OPP, he has not stated a constitutional violation.

Furthermore, even assuming that Johnson's foot fungus was contracted from or associated with the conditions at OPP, he has not established that prison officials knew of an actual risk of serious harm to his person or intentionally ignored that risk. To the extent prison officials were notified through a grievance complaints, Johnson was provided with continuing medical treatment. Thus, even with the presence of mold and water in the showers and the tier where he was assigned, he has not stated a constitutional violation. *See McCarty v. McGee*, No. 06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he was forced to share with other inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a constitutional violation."). The jurisprudence has repeatedly held that the presence of mold and dampness in a prison setting does not render an inmate's confinement unconstitutional. *See*, *e.g.*, *Eaton v. Magee*, No. 10-112, 2012 WL 2459398, at *5 (S.D. Miss. Jun. 27, 2012) ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a constitutional violation."); *Barnett v. Shaw*, No. 11-0399, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (allegation of "excessive amount of black mold in the showers and sinks" was insufficient to raise a claim for constitutional violation), *adopted*, 2011 WL 2214383, at *1 (N.D. Tex. Jun. 7, 2011); *Reynolds v. Newcomer*, No. 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010) (complaints of "the presence of black mold in living areas, eating areas, and shower areas" were found to "rise to no more than a *de minimis* level of imposition with which the Constitution is not concerned" (quotation marks omitted)).

Thus, Johnson's allegations about mold, leaking fixtures and damp air fail to establish constitutional violations. *See Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell); *Davis v. St. Charles Parish Corr. Ctr.*, No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (citing *Talib*, 138 F.3d at 215). "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional." *Wilson v. Lynaugh*, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, fifty-two inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitary living quarters, failed to state a claim.). As one federal appellate court has concluded, "[l]leaky toilets and puddles are unpleasant but not unconstitutional." *Smith v. Melvin*, No. 95-2531, 1996 WL 467658, at *2 (7th Cir. Jul. 26, 1996); *accord Davis*, 2010 WL 890980, at *9; *Wilkerson v. Champagne*, No. 03-1754, 2003 WL 22872106, at *3 (E.D. La. Nov. 28, 2003).

For the foregoing reasons, Johnson's claims are frivolous and otherwise failed to present a claim for which relief can be granted. The claims should be dismissed for this reason pursuant to § 1915, § 1915A, and § 1997e.

### 2. **Outdoor Recreation**

Johnson briefly mentions that he was not taken outdoors often enough, indicating that inmates were taken outside maybe twice a month. His assertion fails to state a cognizable § 1983 claim of violation of his constitutional rights.

Neither the United States Supreme Court nor the Fifth Circuit has ever specifically held that inmates enjoy an absolute right to out-of-cell exercise. *See*, *Doolittle v. Holmes*, No. 06-986, 2010 WL 22552, at *4 (M.D. La. Jan. 4, 2010) (citing *Hewitt v. Henderson*, 271 F. App'x 426,

8

428 (5th Cir. 2008); *Green v. Ferrell*, 801 F.2d 765 (5th Cir. 1986); *McGruder v. Phelps*, 609 F.2d 1023 (5th Cir. 1979)). The Fifth Circuit has recognized instead that the absence of outdoor exercise opportunities may reach the level of a constitutional violation only if it constitutes or causes an impairment to the inmate's health. *Hewitt*, 271 F. App'x at 428. However, inmates have no protected liberty interest in a specific or particular amount of outdoor recreational opportunities, and the "[d]eprivation of exercise is not a per se constitutional violation." *Lewis v. Smith*, 277 F.3d 1373, 2001 WL 1485821, at *1 (5th Cir. 2001). Thus, to assert a claim under § 1983 for lack of outdoor exercise, a prisoner must establish "the existence of any health hazard under the specific circumstances involved." *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir.), *amended in part, vacated in part on other grounds*, 688 F.2d 266 (5th Cir. 1982); *accord Delaney v. DeTella*, 256 F.3d 679, 684 (7th Cir. 2001); *Green*, 801 F.2d at 771.

Johnson has not alleged that the outdoor exercise opportunities he was provided caused any type of serious health hazard. His conclusory allegation is insufficient to establish either a substantial risk of serious harm or any actual injury related to the outdoor exercise opportunities. *See Haralson v. Campuzano*, 356 F. App'x 692, 697 (5th Cir. 2009) (inmate who was denied out-of-cell exercise for seven months while in the prison infirmary failed to raise a genuine issue of material fact as to whether he suffered a serious injury sufficient to constitute an Eighth Amendment violation); *Hernandez*, 522 F.3d at 561 (no constitutional violation where there a lack of exercise posed a substantial risk of serious harm especially where the inmate did not suffer a serious illness or injury resulting therefrom.); *see also*, *Doolittle*, 2010 WL 22552, at *6 (holding that conclusory and unsupported allegation of muscle atrophy from lack of exercise for 2½ months was insufficient to state a claim.). Johnson's claim of insufficient outdoor recreation is frivolous and should be dismissed pursuant to § 1915, § 1915A, and § 1997e.

**IV.     Recommendation**

It is therefore **RECOMMENDED** that Johnson's § 1983 claims against the defendant, Sheriff Gusman, be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted under 28 U.S.C. § 1915, § 1915A, and 42 U.S.C. § 1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[5]

New Orleans, Louisiana, this 6th day of May, 2016.

_____
**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**

---

[5] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.